UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
PATRICIA OLIVIERI,

                                                     Plaintiff,

        -against-

STIFEL, NICOLAUS & COMPANY,
INCORPORATED, NEIL ISLER and ROBERT
CODIGNOTTO, in their individual and
professional capacities,

                                                  Defendants.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
21-cv-00046 (JMA)(ARL)

**FILED**
**CLERK**
1:55 pm, Mar 28, 2022
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Plaintiff Patricia Olivieri ("Plaintiff" or "Olivieri") brings this employment action against her current employer Defendants Stifel, Nicolaus & Company, Inc., and managers, Neil Isler and Robert Codignotto (together, "Defendants") alleging gender discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964 and New York State Human Rights Law. Defendants have moved to compel arbitration and to dismiss the action. For the reasons explained below, Defendants' motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

The Court sets forth only the factual background necessary to determine whether arbitration should be compelled.

**A. The Offer Letter**

On February 5, 2018, Stifel, Nicolaus & Company, Inc., (the "Company") sent a letter to Plaintiff, offering her a position as a "Registered Client Sales Associate" in the Long Island, New York region ("Offer Letter"). (Ex. A to Declaration Leblang Declaration in Support of Motion

1

("Leblang Decl."), ECF No. 25-1.)

The Offer Letter stated "this letter is to serve as a memorandum of understanding as to your employment at Stifel, Nicolaus & Company, Incorporated ("Stifel"), and is not to be considered an employment contract, nor are any of its terms to be considered a guarantee of employment for any length of time." (Id.)

The Offer Letter then described certain terms. Specifically, in a series of bullet points, the Offer Letter provided Plaintiff's "Position," "Base Compensation," and "Conditions," among other terms. (Id.) Under "Conditions," the Offer Letter stated that "[a]s with all Stifel employees, you agree to be subject to all policies and practices of Stifel as set forth in the Associate Manual, any policy manuals and other communications." (Id.)

The end of the Offer Letter asked Plaintiff to "indicate [] acceptance of this offer of employment and agreement to arbitrate by signing below and returning within 3 business days." (Id.) Plaintiff signed and returned the Offer Letter. (Id.) The Company countersigned the Offer Letter. (Id.)

**B. The Employee Handbook**

On February 8, 2018, Ms. Olivieri signed an "Associate Handbook Acknowledgment" ("Acknowledgment Form") (Id. at 7; Exhibit B, ECF No. 25-3.) The Acknowledgment Form contained certain disclaimer language:

> No promise of any term or condition of employment is enforceable unless such term or condition is contained in a written contract of employment.
>
> This Handbook and other Firm policies, programs and manuals, which are issued from time to time, set forth procedures and guidelines which, in any particular situation, do not constitute promises or covenants of any kind and is not a contract of employment between the associate and Stifel nor a guarantee of employment for any length of time. Employment with the Firm is 'at will' and may be terminated at any time, with or without notice and with or without cause or reason, by the associate or the Firm.

2

On February 20, 2018, Plaintiff then completed her "New Associate Compliance Questionnaire" in which she again acknowledged and certified understanding the Company's policies and procedures. (Exhibit C, at 2-3, ECF 25-4.) On January 16, 2019, February 13, 2020, and February 19, 2021, Plaintiff made similar certifications which she agreed to be bound by the policies and procedures set forth in the employee handbook. (Exhibits D, E, and F, ECF Nos. 25-5-25-7.)

After commencing her employment, Plaintiff alleges that she has since been subjected to sexual harassment and retaliation. (Pl's Opp. ECF No. 26 at 7.) On January 5, 2021, Plaintiff commenced this action against Defendants. (ECF No. 1.) On February 4, 2021, Defendants filed a pre-motion letter seeking leave to file a motion to compel arbitration and motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). (ECF No. 11.) On February 11, 2021, Plaintiff filed her opposition. (ECF No. 14.) On March 24, 2021, the Court held a pre-motion conference after which the parties agreed to mediation. (ECF No. 16.) On May 20, 2021, Plaintiff amended, as of right, her Complaint. (ECF No. 19). By letter dated May 25, the parties jointly informed the Court that the mediation was unsuccessful and proposed a briefing schedule for Defendants' motion to compel arbitration. (ECF No. 21.) On May 28, 2021, the Court adopted the parties' proposed briefing schedule. (Electronic Order dated 05/28/2021.)

On June 16, 2021, Plaintiff filed a Supplemental Complaint, adding additional allegations to supplement her discrimination, hostile work environment, and retaliation claims against Defendants. (Supplemental Compl. ECF. No. 23.) On August 4, 2021 Defendants moved to compel arbitration and dismiss of all Plaintiff's claims. (ECF No. 25.) Plaintiffs opposed Defendant's motion and the issue was fully briefed upon filing of Plaintiff's sur-reply on August 13, 2021. (ECF No. 30.)

3

## II.  DISCUSSION

A. <u>Motion to Compel</u>

The Federal Arbitration Act ("FAA")[1] provides that "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Under 9 U.S.C. § 4, "a district court must enter an order to arbitrate upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 22 n.27 (1983) (quotation marks omitted). The statute "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 844 (2d Cir. 1987); <u>see</u>, <u>also</u>, <u>Brown v. Coca-Cola Enterprises, Inc.</u>, No. 08-CV-3231, 2009 WL 1146441, at *5 (E.D.N.Y. Apr. 28, 2009) ("It is well-settled that the FAA generally requires that courts resolve issues of arbitrability in favor of arbitration.")

A motion to compel arbitration is reviewed under a summary judgment standard, and may be granted "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." <u>Thomas v. Pub. Storage, Inc.</u>, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013).

The question of whether an agreement to arbitrate exists between the parties is governed by state contract law. See <u>Meyer v. Uber Techs., Inc.</u>, 868 F.3d 66, 73-74 (2d Cir. 2017). New York law dictates that a court may only compel arbitration when "the evidence establishes ... [a] clear, explicit and unequivocal agreement to arbitrate." <u>Fiveco, Inc. v. Haber</u>, 11 N.Y.3d 140, 144

---

[1] The parties do not dispute that the FAA applies to the at-issue arbitration agreement.

(2008).

A motion to compel arbitration generally requires the court to address two issues: (1) whether the parties have entered into a valid agreement to arbitrate; and (2) if so, whether the dispute at issue falls within the scope of the parties' agreement to arbitrate. In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d at 128; see also Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").

The first question—whether the parties have agreed to arbitrate in the first place— is one only a court can answer, since in the absence of any arbitration agreement at all, questions of arbitrability could hardly have been clearly and unmistakably given over to an arbitrator. Padro v. Citibank, N.A., No. 14-CV-2986, 2015 WL 1802132, at *4 (E.D.N.Y. Apr. 20, 2015)(citing VRG Linhas Aereas S.A. v. Matlin Patterson Global Opportunities Partners II L.P., 717 F.3d 322, 325 n.2 (2d Cir. 2013)

In evaluating the second question—whether the scope of the agreement to arbitrate covers the dispute at issue— courts presume that the parties intend courts, not arbitrators, to decidedisputes about arbitrability. Id. (citing BG Grp., PLC v. Republic of Argentina, 572 U.S. 25, 34 (2014)).

Here the only disputed issue before the Court is whether an enforceable agreement to arbitrate was formed. The parties in this case do not dispute that New York law applies and Plaintiff does not dispute that if the agreement to arbitrate is valid, then Plaintiff's claims are subject to the mandatory arbitration provision.

**1.  Whether the Parties Agreed to Arbitrate**

The Court first turns to the threshold question of whether an agreement to arbitrate was formed between the parties.

A party seeking to compel arbitration "bears the burden of showing that the arbitration agreement exists, and a stay is warranted." Roller v. Centronics Corp., No. 87-CV-5715, 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989); see also Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (summary order) ("The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made.")

In an employment context, courts have consistently found arbitration agreements enforceable where the policy is "distinct and mandatory" and considered to be a "condition of employment." Patterson v. Raymours Furniture Co., 96 F. Supp. 3d 71, 78 (S.D.N.Y. 2015), aff'd, 659 F. App'x 40 (2d Cir. 2016); see also Brown v. St. Paul Travelers Companies, Inc., 331 F. App'x 68, 69-70 (2d Cir. 2009) (arbitration agreement enforceable where employee was advised that compliance with arbitration policy was condition of continued employment).

Defendants argue that Plaintiff executed a valid and binding arbitration agreement by signing the Offer Letter, which referenced the Company's employee handbook containing the arbitration policy. (Def's Mem. at 8, ECF No. 25-12.) Defendants further contend that Plaintiff "reaffirmed" this agreement, notwithstanding the documents' language disclaiming contract formation, through subsequent signed employee handbook acknowledgement forms and annual compliance questionnaires. (Def's Mem. at 8-9.)

Plaintiff counters that the parties did not agree to arbitrate, on grounds that (1) the Offer Letter did not contain an agreement to arbitrate, (2) the employee handbooks disclaims any contract formation, and (3) Plaintiff's certification and recertifications do not create arbitration

6

contracts. Plaintiff's principal contention is that the documents containing arbitration provisions disclaimed contract formation and therefore no objective manifestation of intent to arbitrate can be found. The Court disagrees.

The parties agreed to arbitrate when Plaintiff executed her Offer Letter which contained an explicit arbitration provision. The Offer Letter provided Plaintiff clear notice of an "agreement to arbitrate" and she further assented to that agreement by continuing to work at the Company. See, e.g., Thomas v. Pub. Storage, Inc., 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013) (finding an agreement to arbitrate where plaintiff received notice of an arbitration policy at the beginning of her employment and continued to work at the company); see also Manigault v. Macy's E., LLC, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order) (noting that continuing to work after receiving notice of an arbitration agreement constitutes an agreement to arbitrate.)

### i. *The agreement to arbitrate was a condition of employment*

The Court finds it significant that the Offer Letter expressly contained a section titled "Conditions" under which Plaintiff "agree[d] to be subject to the policies and practices" in the employee handbook. (ECF No. 25-2.) The Offer Letter therefore incorporated by reference the employee handbook and put Plaintiff on notice that the handbook included terms that were deemed to be within the offer of employment. Pettersen v. Volcano Corp., No. 18-CV-03021, 2020 WL 6323937, at *1 (E.D.N.Y. Sept. 8, 2020), report and recommendation adopted, No. 18-CV-3021, 2020 WL 6323122 (E.D.N.Y. Oct. 27, 2020) (" There is no dispute that before [plaintiff] began employment, [plaintiff] was aware, through the Offer Letter Arbitration Clause, that [defendant-company] had a policy to arbitrate employment disputes.")

Plaintiff's signed acknowledgements of the employee handbook further support the finding that the arbitration agreement was a condition of her employment. "Courts in this district routinely

7

uphold arbitration agreements contained in employee handbooks, where, as here, the employee has signed an acknowledgment form." Chanchani v. Salomon/Smith Barney, Inc., No. 99-Civ.-9219, 2001 WL 204214, at *3 (S.D.N.Y. Mar. 1, 2001)); see also Isaacs v. OCE Bus. Servs., Inc., 968 F. Supp. 2d 564, 571 (S.D.N.Y. 2013) ("Under New York law, employee handbook revisions are binding when an employee continues to work after receiving notice of the revisions."); Lockette v. Morgan Stanley, No. 18-CV-876, 2018 WL 4778920, at *5 (S.D.N.Y. Oct. 3, 2018) ("continued employment generally serves as legal consideration sufficient to enforce an arbitration agreement"). The Court credits Defendants' affidavit attesting that an employee's failure to complete the compliance questionnaires and certifications would result in termination of employment. (Affidavit of Geoffrey Bright ¶ 7, ECF No. 25-11.)

Plaintiff's counterarguments that the arbitration agreement was not provided at the time of the signing the Offer Letter and that it is unclear what the arbitration language referred to are unpersuasive. Under New York Law, an arbitration agreement need not be enclosed with the Offer Letter or signed, for that matter, to be enforceable. DeBono v. Washington Mut. Bank, No. 05-CV-10333, 2006 WL 3538938, at *3 (S.D.N.Y. Dec. 8, 2006) (granting motion to compel arbitration and noting that "under New York law, a plaintiff is responsible for knowing the contents of a document he signs."). "The law does not relieve a person merely because he has failed to read a document which he has executed." Metzger v. Aetna Ins. Co., 227 N.Y. 411, 413, 125 N.E. 814, 816 (1920).

> ii. *The agreement to arbitrate was distinct and mandatory*

The Court also finds the arbitration agreement enforceable because it is written in "distinct and mandatory" terms. The Company's arbitration policy is listed separately in the table of contents and under a section within the employee handbook titled "Compliance and Operating

8

Procedures." The arbitration policy repeatedly refers to itself as an "agreement." (See, e.g., Arbitration Policy, ECF No. 28-5 at 5, "Nothing in this agreement shall be construed to preclude filing a charge or complaint with the Equal Employment Opportunity Commission (EEOC) […]," "This agreement specifically waives any right to a trial by jury for all claims covered herein.") (emphasis added).

This is more than sufficient to find the Company's policy "distinct and mandatory." Topf v. Warnaco, Inc., 942 F. Supp. 762, 767 (D. Conn. 1996) (a clearly labeled arbitration section and signed acknowledgment supports finding an enforceable agreement.); Woo Jung Cho v. Cinereach Ltd., No. 19-CV-513, 2020 WL 1330655, at *4 (S.D.N.Y. Mar. 23, 2020) (finding language such as "arbitration shall be the exclusive means of resolving any dispute arising out of your employment" as "distinct and mandatory"); MQDC, Inc. v. Steadfast Ins. Co., No. 12-cv-1424, 2013 WL 6388624, at *1 (E.D.N.Y. Dec. 6, 2013) (holding that the plain language in arbitration agreement was mandatory where the operative language stated that "any dispute" "shall be submitted to arbitration")

Contrary to Plaintiff's urging, the documents' language disclaiming contract formation is not in contradiction with finding an enforceable agreement, particularly in light of the Offer Letter's clear language. Courts have agreed that an employment handbook generally is not a contract but can be with regards to each party's right to arbitrate employment disputes. See, e.g., Topf v. Warnaco, Inc., 942 F. Supp. 762, 767 (D. Conn. 1996) (citing Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 451 (2d Cir. 1995); see also Litvinov v. UnitedHealth Grp. Inc., No. 13-CIV-8541, 2014 WL 1054394, at *3 (S.D.N.Y. Mar. 11, 2014) (finding an enforceable agreement where offer letter provided notice of an arbitration agreement and plaintiff signed acknowledgements of the employee handbook.)

9

The Court concludes that the parties agreed to arbitrate and given that the parties do not dispute that Plaintiff's claims arise from her employment, the entirety of Plaintiff's claims must be submitted to arbitration.

## B. Motion to Dismiss and Order to Stay

Because the Court grants the motion to compel arbitration, it also stays this action. The FAA mandates a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested. See Katz v. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested."). Accordingly, the Court declines to dismiss this action.

### III. CONCLUSION

Defendant's motion to compel arbitration is GRANTED. Defendant's motion to dismiss is DENIED.

**SO ORDERED.**

Dated: March 28, 2022
Central Islip, New York

                                                    /s/   JMA
                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE